## *Stephen Shewel, surviving partner, *against* [*47 Joseph Fell, Esq.

In debt against a sheriff for an escape, parol evidence that he did not take the prisoner until after the return day of the *ca. sa.* which was returned "in custody," is not admissible.

In debt for an escape, on *ca. sa.* the jury must find the whole debt and costs.

The statutes of Westm. 2. (13 Ed. 1. c. 11, and 1 Ric. 2. c. 12,) concerning escapes, extend to Pennsylvania.

THIS cause was tried at Newtown for Bucks county, on the 12th June 1800, before SHIPPEN, C. J., and YEATES, J., at the Circuit Court.

The suit was in debt against the defendant, as sheriff, for the escape of Robert Shewel on a *ca. sa.* who was soon after liberated from his confinement, as an insolvent debtor. The defendant offered to shew, that he had not taken the person of the debtor under the *ca. sa.* until the third day of the term to which the process was returnable, and that his return of him "in custody" was founded on a mistake. This testimony the court overruled, as it would contradict the sheriff's return; and the jury, with considerable difficulty, grounded on the great hardship of the case, found a verdict for the plaintiff for 933l. 14s. 7d., the whole debt. It was then agreed that a motion for a new trial should be entered and overruled by the court, and judgment entered for the plaintiff on the verdict, without prejudice to the defendant, on the questions of law, which were intended to be discussed on an appeal, before the whole court.

The following reasons were assigned and certified by the counsel in support of the appeal:

1. A new trial ought to have been granted, as the court, upon the trial, refused to permit the defendant to give evidence that the return of *cepi corpus* on the *capias ad satisfaciendum* was made by mistake; and that Robert Shewel, for whose escape in execution this action was brought, was never legally in his custody.

2. A new trial ought to have been granted, as the court, upon the trial, refused to permit the jury to take the particular circumstances of the case into consideration and regulate the amount of their verdict according to the nature and degree of the defendant's negligence, and the damages actually suffered by the plaintiff in consequence thereof; but charged them posi-

tively to find for the plaintiff to the full amount of the debt and costs in the former suit : whereas the whole case should have been submitted to the jury, with directions to measure the amount of their verdict according to the nature and degree of the defendant's negligence, and the damages actually sustained in consequence thereof, by the plaintiff.

3. The judgment should have been arrested, as the action of debt does not lie in Pennsylvania for an escape in execution, the provisions of the statute of Westminster, which gives the action in England, being altogether unsuitable to the situation *and circumstances of this country, and therefore not extending here.

*48]

The case was argued on three different days, viz. : December 30th, 1802 ; March 17th, 1803, and December 23d, 1803, by Mr. T. Ross, on the part of the plaintiff, and by Messrs. Ingersoll and Condy on the part of the defendant.

The argument on both sides was conducted on the same system of reasoning, as at the Circuit Court, which is not intended to be repeated here : but several new authorities were cited.

On the first point, the defendant's counsel contended, that the parol testimony ought to have been received, and put several cases by way of illustration. If there should be two persons of the same name, and one of them is arrested wrongfully, shall the mistake of the sheriff be conclusive either on him or the party ? How long shall the injured party be continued in confinement ? Suppose an arrest on Sunday by an ignorant bailiff, or after the return day of the process, as we take to be the present case, shall the superior officer, as well as the injured person, be concluded and estopped thereby ? Estoppels are not to be favored in general ; they prevent an investigation of the truth of the case. 4 T. R. 254. It is a general rule that deeds and other writings must be judged of by their own words ; yet in cases of fraud or mistake, parol evidence will be received. Where a person is concluded by the sheriff's return, it is on the ground that he has his remedy against the sheriff. In England the general return " of goods levied " will bind a sheriff to the amount of the debt and costs : but this will not be pretended to be the case in this state ; because, by the constant practice, should all the goods be levied and fairly sold, and the amount carried to the plaintiff's credit, the sheriff may shew the same in evidence and discharge himself from further responsibility.

The plaintiff's counsel answered that the admission of a sheriff to contradict the return he had made, would be attended with the most dangerous consequences. If any error should be committed by him in his returns, the court to which the process was returnable could alone direct the correction of it. In the instances put by the defendant's counsel, if the sheriff should knowingly arrest a wrong person and obstinately persist in it by adhering to his return, he would conclude himself thereby ;

[Shewel v. Fell.]

but in that instance, as well as the Sunday arrest, the court, on a proper application, under the superintending summary powers, which they clearly possess over all their officers, would give redress to the injured party ; or in a disputed case, would refer him to his remedy against the sheriff.　In England if a sheriff returns goods levied to such a value, he must answer to *that value.　7 Mod. 118.　　　　　　　　　　　　[*49

On the second point, the defendant's counsel cited the words of BULLER J., in Planch v. Anderson, 5 T. R. 40.　In debt on the statute against the sheriff for an escape out of his custody in execution, the plaintiff may (without considering how far he must) recover the whole debt.　This would seem to imply a doubt on that head.　In Johnson v. Macon, 1 Wash. 6, it is said by Pendleton, president, escapes which in England are fixed upon the sheriff from legal deductions, seem to be done away in this country, by the act of assembly, which subjects the sheriff, only when the jury expressly find that the debtor escaped with the consent, or through the negligence of the officer.　In Connecticut, case lies only against officers in all cases of escape, whether on mesne process or execution.　2 Swift's Syst. 112.　The courts there adopt the principle, that they may take into consideration, the circumstances and ability of the person escaping.　Ib. 113. A plaintiff in debt may now recover less than he declares for though it was formerly otherwise.　2 Bl. Rep. 1221.　3 Woodes. 95.

To this it was answered, the expressions of BULLER conveyed no doubt, but leave the point at large.　He had asserted his decided opinion before, that the plaintiff must recover, in such case, the full debt ; 2 T. R. 129, and the same doctrine is explicitly laid down in 2 Bl. Rep. 1048, and in 3 Bla. Com. 164. The writ of *capias ad satisfaciendum* is a writ of the highest nature, and when once executed, no other process can be sued out against the goods or land.　Sherid. B. R. 316.　But though it is so at law, sequestration may issue in chancery.　Talb. Cas. 222.　Ambl. 79.　An omission of the sheriff's return shall not be amended, 5 Co. 41. b., as if the *haebas corpora* be *album breve*. Mo. 868.　The sheriff's return shall conclude him.　10 Vin. 78 pl. 4.　Cites Bro. retorn de brief. pl. 107, who cites 7 Hen. 4. 11. On two extents levied, the sheriff was not allowed to amend his returns.　Bunb. 323.　Indorsement of N. E. I. on a *ca. sa.* is good evidence that the sheriff received it.　Cowp. 63.　Debt does not lie at common law for an escape, being given by statute.　1 Show. 376.　But the plaintiff may now maintain either case or debt for an escape in execution.　3 Bac. 246.　Cro. Jac. 288. 2 Bulst. 321.　Cro. Eliz. 767.

The third point was fully advocated by the defendant's counsel.　They insisted, that the statutes of 13 Ed. 1. c. 11. (commonly styled Westm. 2.) and 1 Ric. 2. c. 12, were enacted in England, on grounds merely local, and confined to the policy of that kingdom.　The first of them, which respected "the mas-

[Shewel v. Fell.]

"ters' remedy against their servants, and other accomptants,"
is to be found in 1 Ruff. stat. 90, and is commented on in 2
Reeve's *Engl. Law 178.   The second, which is pointec
*50]   in express terms to the Warden of the Fleet Prison, is to
be found in 1 Ruff. stat. 337, and is commented on in 3 Reeve's
Engl. Law 205.   BULLER J. remarks in 1 T. R. 132, that the
former, by a liberal construction has been held to extend to all
cases, and the latter to all gaolers.   It is a liberality of exten-
sion not justified either by the words or spirit of the two stat-
utes, and which he admits, "never have been, nor can be
construed literally."

By the statute of Westm. 2, servants and receivers found in ar
rearages upon accompt are to be delivered to the next gaol, and
imprisoned in irons under safe custody ; and the sheriff or keep-
er of such gaol is to take heed, that if he suffer him to go out of
prison, and thereof be convict, he shall be answerable to his mas-
ter of the damages done to him by such his servant, according
as it may be found by the country, and shall have his recovery
by writ of debt.   The statute of 1 Ric. 2. c. 12, ordains, that no
Warden of the Fleet shall suffer any prisoner to go out of prison
without making gree to the parties of that thereof they were
judged, &c.   It is clear therefore, that both acts meant only to
provide against voluntary escapes, whatever construction may
since have been put on them ; and that it was intended, that the
jury should judge of and decide on the damages which the plaint-
iff has received.   The latter remark is properly referable to the
second head of argument, and such is the received law both in
Virginia and Connecticut.   Christian in note 20. to 1 Bla. Com.
88, says, it has been held, that the same words in statutes will
bear different interpretations, according to the nature of the suit
or prosecution instituted upon them, 2 Bl. Rep. 1226, which in
plain terms, means, that acts of parliment have sometimes been
carried beyond the natural import of their words.   It requires an
antiquarian to decypher the object of the statute of Westm. 2,
and 1 Ric. 2. c. 12, but it is apprehended, he would never disco-
ver that the sheriff must necessarily pay the whole debt, in eve-
ry supposable case, of a party escaping out of execution.

But a previous question must be determined, whether these
statutes are in force in Pennsylvania ?   It lies on our opponent
to establish the affirmative of this proposition.   It will not be
pretended, that there has been any decision of that point upon
argument.   If some few actions of debt have been brought upon
escapes on judicial process, they have all passed *sub silentio ;*
and usage of a slight nature shall not control in a matter of so
great and general moment.   General warrants were also in use
many years before their radical defect was ascertained.   Our
opinion is fortified by the sentiments expressed by M'KEAN, C.
J. in the case of Benjamin Fuller v. James Ash, esq. sheriff of
Philadelphia county, tried here in September term, 1795.   He

*particularly reprobated the adoption of the resolutions of the British courts of justice since the revolution. Great latitude was allowed, as to the evidence adduced by the sheriff on that occasion ; and the case has not since been revived.

It is declared in the preamble of the act of assembly, passed 31st May 1718 (1 Dall. St. Laws, 133) that acts of parliament do not extend to the plantations, unless they are particularly named in such acts : but this relates to statutes enacted after the settlement of the colonies. In Morris's lessee *v.* Vanderen, the court laid down the rule, that the common law of England had always been in force in Pennsylvania ; that all statutes made in Great Britain before the settlement of Pennsylvania, had no force here, unless they were convenient and adapted to the circumstances of the country ; and that all statutes made since the settlement of Pennsylvania, had no force here, unless the colonies were particularly named. 1 Dall. 67. The statute of 32 Hen. 8, c. 9, against maintenance and embracery, and the limitation act of 21 Jac. 1, c. 16, were held not to be in force here ; but it was otherwise held as to the statute of limitations of 32 Hen. 8, c. 2. Ib. Judge TUCKER in his appendix to 1 Bla. Com. 393, seems to hold, that legislative provisions are necessary to the extension of the British acts of parliament.

It will be recollected, that when the statutes in question were enacted, the parliaments were at the devotion of the monarchs, and the barons and magnates of the kingdom were all-powerful. There were strong fortresses in every country, wherein prisoners might be kept in safety. The *posse comitatus* could be readily collected to repress any attempt to break the gaols ; and in England, on a breach of gaol by an armed force, the sheriff may have his remedy over against the hundred. In all these particulars, our local circumstances vary. We possess a greater equality of power and rights ; we have even log gaols in some of the counties, and no gaols very secure ; our *posses* cannot easily be raised ; and the sheriff has no remedy against the hundred or township. We may therefore well say, that the extension of these statutes, is neither convenient, nor adapted to the manners, customs, or general policy of this country, and that the correct rule in all cases of actions brought against officers for neglect or misdemeanor in office, is, to proportion the recovery to the delinquency of the officer and the peculiar circumstances of every case. This is the true line of justice, and accords with the principles of the common law. At common law, debt would not lie for an escape ; nor since the statutes, would it lie against the warden's executors for an escape, unless he had been thereof convicted in his life time. It was personal negligence in him. Dy. 322, b.

*The plaintiff's counsel answered, that the court had nothing to do with the municipal regulations either of [*52 Virginia or Connecticut. It might not suit the genius or spirit of those governments to extend certain acts of parliament, when

it might perfectly accord with the general systems of other states to adopt them. It is of no moment, that no decision can be quoted, wherein these statutes have been adjudged to extend upon full argument. The point was never seriously made a question of, until now; and that statutes may be extended by practice, is universally admitted amongst us, let the opinion in Virginia be what it may. The fact is incontestible, that both before and since the revolution, debts have been recovered under the operative effect of the statutes in question, in many instances ; and they have been extended by practice and acted under, ever since the settlement of Pennsylvania. By the 6th section of the royal charter to William Penn, it is provided, that the English laws shall be in force in Pennsylvania, until the same be altered by the legislature. 1 Dall. St. Laws, Append. 3. Antiquated as the statute of Westm. 2, may be supposed to be, the penalties therein prescribed are indispensably necessary to secure the faithful execution of the duties of sheriffs. It cannot be said to be inconvenient or unsuitable to our situation or local circumstances. By the act of 28th January 1777, such of the statute laws of England, as had theretofore been in force in the province, are declared to be binding on the inhabitants of this state. 1 St. Laws, 723. At common law, a common person could not have taken the body of his debtor in execution for his debt, but that power was given by the stat. 25 Ed. 3, 17. Godb. 390. 10 Vin. 583, pl. 20. 2 Bac. 239. No reason can be given why this statute should be extended, which will not hold as to those under consideration. The party transgressing the provisions of a penal statute, is bound by the fundamental contract of society, to obey the directions of the legislature, and pay the forfeiture incurred, to such persons as the law requires. 3 Bl. Com. 159. Credit cannot be supported, unless the payment of a just debt can be enforced by the pain of imprisonment. A bond given to a sheriff, to indemnify him against the voluntary escape of his prisoner, is void by the common law. 10 Co. 100. 1 Bos. and Pull. 277. In an action qui tam for usury, the plaintiff recovers the whole debt, though the case may be supposed to be hard. And no instance can be shewn, where less than the whole penalty is recovered on a penal statute.

The court continued the case under advisement, their only doubt being, how far the practice had extended the statutes of *13 Ed. 1, c. 11, and 1 Ric. 2, c. 12. On this point, they proposed to enquire for themselves.

And this term, SHIPPEN, C. J. declining to give the opinion of the court, as he was not present at the last argument (though he fully concurred with the other justices), YEATES, J. delivered the opinion of the court as follows :

The first point made in this case seems to admit of little

[Shewel *v.* Fell.]

doubt.  The assertion that a sheriff or other ministerial officer may explain or contradict his returns "of goods levied," "lands "sold" or "in custody," on suits brought against him, founded on these returns, and while they remain in full force and unaltered, sounds strangely and appears unwarrantable.  If a mistake has been made in a return, which ought to be corrected, the application for relief should be made to the tribunal from which the process issued, and into which it is returnable.  They, in their discretion, can only grant the relief prayed for, in case the attendant circumstances warrant such interposition.

The second and third points may well be considered together.  That the statutes of Westm. 2 and 1 Rich. 2, have been long practised under, I well know.  My own experience on the subject extends back above forty years; and I then took it to be generally understood that the practice had obtained long before my time.  The act of 28th January 1777 declares that such of the statutes as have been in force in the late province should remain in force until altered by the legislature.  In the language of the late chief justice, 1 Dall. 75, "we know "that many statutes for near a century have been practised un-"der in the late province, which were never adopted by the "legislature; and that they might be adopted by usage, and so "become in force, is very clear."  There was no decision in Fuller *v.* Ash, tried here in September term 1795, which the defendant's counsel has so much relied on; though in consequence of what dropped from the then chief justice, the plaintiff's counsel submitted to a nonsuit, with liberty to move for a new trial.  If these statutes are considered as convenient and applicable to our local circumstances, they will fall within the general rule of statutes made before the settlement of the colonies extending here.  And why are they not thus convenient and applicable?  If the policy of the law allows imprisonment for debt, a slight acquaintance with judicial proceedings will assure us that it cannot be carried into effect unless a rigid rule is adopted, whereby the conduct of ministerial officers may be strictly examined.  We are taught by experience that severe penalties are indispensably necessary to exact the faithful performance of the duties of sheriffs.

*If these two acts of parliament form a part of our civil code, the adoption of the English decisions under [*54 them forms a necessary consequence, at least, of those resolutions, which took place before the American revolution.  Should it be objected that hard cases may happen by reason hereof, I admit the objection and freely concede that this is one of them.  But I answer that general laws cannot be so formed as to exempt each particular case from inconveniences.  It would be a greater mischief to have no general rule, whereby we may accurately judge of the conduct of public officers, in whom such extensive trust is reposed.

To leave the nature and degree of a sheriff's negligence of

judicial process, and the damages actually suffered by the plaintiff in consequence thereof, to the opinion of a jury, according to their discretion, without any known or established rule, would, in our ideas, introduce the utmost uncertainty, and be attended with the most fatal consequences in the administration of justice : and if any judgments have been obtained against sheriffs, for escapes on judicial process, within the last seven years,* they must necessarily be reversed, according to the doctrine advocated by the defendant's counsel, on writs of error ; which would be a great evil.

Whatsoever our personal feelings may be, under the circumstances of the present case, we find ourselves constrained to decide in favour of the plaintiff, for the whole debt recovered by the verdict.

Judgment for the plaintiff.

Cited in 13 S & R. 267 in support of the decision that the official recognizance entered into by a sheriff and his sureties, is not a record, and, it seems, the plea of *nul tiel record* is improper to a *scire facias* upon it.

Cited in 5 Watts 144 to show that in debt for the escape of one held in execution, the jury, if they find for the plaintiff must find the whole debt and costs.